IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHAD HERRON, individually, on behalf of himself and all others similarly situated, | ) ) ) ) | 2:12-cv-02103-GEB-JFM |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT |
| v. | ) ) ) | |
| BEST BUY CO. INC., a Minnesota corporation; TOSHIBA AMERICA INFORMATION SYSTEMS, INC., a California corporation; and DOES 1-100, inclusive, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

_____

Defendants Best Buy Co. Inc. ("Best Buy") and Toshiba America Information Systems, Inc. ("Toshiba") (collectively "Defendants") move to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure ("Rules") 9(b) and 12(b)(6). This case is a putative consumer class action alleging violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770 (a)(5), (a)(7), (a)(9), and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. Plaintiff argues that Defendants affirmatively misrepresented the battery life on his Toshiba Satellite L505 laptop (the "Laptop") as "up to 3.32 hours" even though this battery life "could never be achieved when the [Laptop] was used in normal, practical, and realistic circumstances," and that Defendants concealed

1

or failed to disclose that the battery life testing parameters Defendants employed "bear no rational or reasonable relationship to an average consumer's expected use of [the] Laptop." (Opp'n to Mot. to Dismiss ("Opp'n") ECF No. 11, 1:16—17, 4:14—15.) Defendants argue that Plaintiff fails to allege any fraudulent affirmative misrepresentations, fraudulent omissions, unlawful or unfair conduct, or that Toshiba participated in and controlled Best Buy's representations concerning the Laptop. (Mot. to Dismiss ("Mot.") ECF No. 7, 4:18—14:12.) Plaintiff opposes the motion.

## I. FACTUAL ALLEGATIONS

Plaintiff alleges the following in his First Amended Class Action Complaint ("FAC"). On December 15, 2009, after looking at the product tags for various laptops, Plaintiff purchased a Toshiba Satellite L505 Laptop from a Best Buy retail store in Folsom, California. (FAC ¶ 9 & Ex. A.) Best Buy displays its laptops with a "'product tag,' which contains the price and a brief description of the features of the laptop." (FAC ¶ 43.) "One prominent feature is 'Battery.'" (Id. ¶ 43.) "Best Buy represented Plaintiff's Laptop battery life to be 'up to 3.32 hours.'" (Id. ¶ 44.) Best Buy did not provide "any explanation as to how the 'up to' hours was calculated or determined on the product tag or elsewhere" in the store, and "there was no disclaimer, qualifier, or other language." (Id. ¶¶ 45, 12.)

Plaintiff "decided to purchase the Toshiba Satellite L505 [Laptop] based substantially on his reliance on the representation that the battery life for that model was 'up to 3.32 hours.'" (Id. ¶ 11.) "Plaintiff . . . believed that the represented battery life of 'up to 3.32 hours' was reflective of how long Plaintiff could expect his Laptop to operate when being powered solely by its battery." (Id. ¶ 12.) In

fact, "[i]n the years since Plaintiff purchased his Laptop, he has never once achieved even close to the represented 3.32 hours of battery life." (Id. ¶ 14.)

Toshiba uses the MobileMark 2007 ("MM07") benchmark test to measure the battery life of its Toshiba L505 Laptops. (Id. ¶¶ 24, 35.) During the test, the computer's monitor is set to 60 nits, or "the brightness of 20% to 30% of [the] normal level." (Id. ¶ 26.) Meanwhile, "the computer's Wi-Fi, Bluetooth, and other wireless functions are disabled so the computer is not drawing power from the battery to perform these functions," and the computer's "main processor chip is set to 5% to 7.5% of its normal capacity" so that it "is essentially running in an idle state." (Id. ¶¶ 27, 28.) Three separate performance tests are then administered: (1) a DVD test where "a DVD movie is played until the battery dies," (2) a productivity test where the computer "perform[s] common office activities" such as data processing, and (3) a reading test where the computer "read[s] a PDF document pausing [for] two minutes on each page." (Id. ¶ 29(a)–(c).) "MM07 does not provide an 'overall' rating; rather, the computer is given three scores, one for each category (DVD, Productivity, and Reader). The laptop manufacturer or retailer may choose which score to report to consumers." (Id. ¶ 30.)

"Toshiba conveys the results of the Laptop's MM07" test to "third party retailers, such as Best Buy . . . with the intention and desire that these third party retailers will, in turn, represent to consumers these results." (Id. ¶ 36.) Since MM07 testing bears "no resemblance to the real-life and everyday uses of laptop computers and notebooks," the Laptop's "actual battery life [i]s substantially less than that which was represented by Defendants." (Id. ¶¶ 31, 3.)

3

On its website, Best Buy describes its computers' specifications, including their battery lives. (<u>Id.</u> ¶¶ 46—48.) "[E]ach [L]aptop's battery life is represented as being 'up to' a specified number of hours." (<u>Id.</u> ¶ 46.) Customers can click on this battery life representation to display a pop-up box. (<u>Id.</u> ¶ 47.) The pop-up box states:

> Battery Life
> Battery life tested using MobileMark 2007. Battery life will vary depending on the product configuration, product model, applications loaded on the product, power management setting of the product, and the product features used by the customer. As with all batteries, the maximum capacity of this battery will decrease with time and usage.

(<u>Id.</u> ¶ 47.) "Other than the statement that the Laptop's battery life was tested using MobileMark 2007 . . . there is not any explanation [on the website] as to how the 'up to' hours was calculated or any other information." (<u>Id.</u> ¶ 48.)

"Plaintiff paid more for his Laptop than he would have paid had the material fact not been concealed or omitted that the battery life for his Laptop was calculated with: (i) its screen set to 60 nits; (ii) its Wi-Fi, Bluetooth, and other wireless functions disabled; and (iii) its main processor chip set to 5% to 7.5% of its normal capacity." (<u>Id.</u> ¶ 15.)

## II. LEGAL STANDARD

Decision on a Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." <u>Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1054 (9th Cir. 2011) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678—79 (2009)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim under Rule 12(b)(6), "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks omitted). However, this tenet does not apply to "legal conclusions . . . cast in the form of factual allegations." Id. (internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (internal quotation marks omitted); see also Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

### III. DISCUSSION

**A. Toshiba's Participation and Control Over Best Buy's Representations**

**1. UCL**

Plaintiff alleges Defendants violated the UCL by engaging in an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." Berryman v. Merit Prop. Mgm't, Inc., 152 Cal. App. 4th 1544, 1554 (2007); see also Klein v. Chevron U.S.A., Inc., 202 Cal. App. 4th 1342, 1374 (2012). Here, although Plaintiff's claims sound

primarily in fraud, Plaintiff also alleges claims under the unlawful and unfair prongs of the UCL. (See FAC ¶¶ 89, 90, 94, 95.) Toshiba seeks dismissal of all UCL claims against it, arguing that "[t]o impose UCL . . . liability . . . [P]laintiff must allege with particularity facts demonstrating [Toshiba's] 'personal participation in the unlawful practices and unbridled control over the practices that are found to violate' the UCL." (Mot. 13:5—7 (quoting Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 808 (9th Cir. 2007)).) Toshiba asserts that "Plaintiff has failed to plead any representations by [Toshiba], and has failed to plead any facts demonstrating [its] participation and unbridled control over Best Buy's representations." (Mot. 14:8—10.)[1]

Plaintiff counters that it has "sufficiently establish[ed] Toshiba's participation in the creation of [Best Buy's] product tags" since the information on the product tags "was provided directly by, and therefore controlled by, Toshiba." (Opp'n 21:21—23.) Toshiba rejoins this contention is insufficient since "Plaintiff does not allege that [Toshiba] told Best Buy what it should or should not put on its product tags or its website, nor does he allege that Best Buy was required to follow such instructions had they been given," and the "practices that

---

[1] Toshiba also argues that whereas Best Buy's product tag merely lists the Laptop's battery life as "up to 3.32 hours," Toshiba's website provides numerous disclosures concerning the Laptop's battery life and MM07 testing. (Reply, ECF No. 13, 11:27—12:4.) Toshiba requests judicial notice of the Toshiba webpage providing these disclosures and describing the Toshiba Satellite L505 Laptop. (Defs.' Req. for Judicial Not., ECF No. 12, Ex. A.) However, Toshiba does not allege that the webpage printout provided reflects the contents of Toshiba's webpage during the applicable proposed class period. Accordingly, Toshiba's request for judicial notice of the webpage is denied. See Bingham v. Holder, 637 F.3d 1040, 1045 n.3 (9th Cir. 2011) (stating the "content of particular websites on a specified date . . . is not 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'" and denying request for judicial notice of webpage on that ground).

are alleged to have violated the UCL . . . here are solely Best Buy practices." (Reply 11:17—19, 11:22—23.)

"A defendant's liability [under the UCL] must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices." Emery v. Visa Int'l Serv. Ass'n, 95 Cal. App. 4th 952, 960 (2002) (quoting People v. Toomey, 157 Cal. App. 3d 1, 15 (1984)); see also In re Firearm Cases, 126 Cal. App. 4th 959, 985, 983 (2005) (rejecting UCL claim where defendants "did not control the wrongful acts [in question] or encourage others to engage in questionable acts," even though defendants did "have a relationship with the wrongdoers"). Here, rather than "exercis[ing] control over the preparation or distribution" of Best Buy's battery life representation, Emery, 95 Cal. App. 4th at 960, Toshiba merely "convey[ed to Best Buy] the results of the Laptop's MM07 test." (FAC ¶ 36.) Given these allegations, "[t]he worst that can be said is that [Toshiba] did not take more aggressive corrective steps" to police Best Buy's representations concerning the Laptop's battery test results. Emery, 95 Cal. App. 4th at 965. Failure to take on the role of "global policeman" is insufficient to support liability under the UCL. Id. at 966. Accordingly, Plaintiff's UCL claims against Toshiba for unlawful, unfair, and fraudulent practices are dismissed.

**2. CLRA**

Plaintiff alleges Defendants violated the following quoted provisions of the CLRA: "[r]epresenting that goods or services have . . . characteristics . . . which they do not have," Cal. Civ. Code § 1770(a)(5); "[r]epresenting that goods or services are of a particular standard, quality , or grade, . . . if they are of another," id. § 1770(a)(7); and "[a]dvertising goods or services with intent not to sell

them as advertised." Id. § 1770(a)(9). These provisions of the CLRA proscribe both fraudulent omissions and fraudulent affirmative misrepresentations. Outboard Marine Corp. v. Superior Court, 52 Cal. App. 3d 30, 36 (1975); see also Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 255 (2011). Plaintiff alleges claims under both theories.

Toshiba seeks dismissal of Plaintiff's CLRA claims against it, arguing that "[t]o impose . . . CLRA liability against [it], plaintiff must [likewise] allege with particularity facts demonstrating [Toshiba's] 'personal participation in the unlawful practices and unbridled control over the practices.'" (Mot. 13:5—7 (quoting Perfect 10, 494 F.3d at 808).) This argument is premised on the same arguments Toshiba made when challenging Plaintiff's UCL claims. However, since Toshiba has not provided sufficient authority supporting its position that the UCL personal participation and unbridled control standard applies to CLRA pleadings, this portion of its motion is denied. See Emery, 95 Cal. App. 4th at 960 (enunciating the "personal participation . . . and unbridled control" standard in UCL case, without CLRA claims); Toomey, 157 Cal. App. 3d at 14—15  (articulating these criteria for first time in UCL case, where the CLRA is unmentioned).

**B. UCL & CLRA Fraudulent Acts or Practices**

　　**1. Rule 9(b)**

Plaintiff's CLRA claims and UCL fraud claim must satisfy Rule 9(b)'s heightened pleading standards since Plaintiff's allegations involve fraudulent conduct. It is well settled that a federal court examines state claims to determine whether the elements of fraud have been pled with Federal Rule of Civil Procedure 9(b)'s required specificity, irrespective of whether state law is the substantive law at issue. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

"Rule 9(b) requires a party to 'state with particularity the circumstances constituting fraud or mistake,' including 'the who, what, when, where, and how of the misconduct charged." <u>Ebeid ex rel. United States v. Lungwitz</u>, 616 F.3d 993, 998 (9th Cir. 2010) (quoting <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003)). Further, the Ninth Circuit has "specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL." <u>Kearns</u>, 567 F.3d at 1125.

Defendants argue "[P]laintiff has not satisfied the requirements of Rule 8, let alone the heightened requirements of Rule 9(b)." (Mot. 10:13—14.) Plaintiff rejoins that the FAC "satisfies the pleading requirements of [Rule] 9(b)" by recounting the who, what, when, where, and how of the alleged misconduct, (Opp'n 6:13, 7:3—8:27), and since the FAC's allegations are "strikingly similar" to the allegations found to satisfy Rule 9(b) in <u>Kowalsky v. Hewlett-Packard Company</u>. (Opp'n 7:1 (citing 771 F. Supp. 2d 1138, 1143 (N.D. Cal. 2010), *vacated in part on other grounds by* 771 F. Supp. 2d 1156 (N.D. Cal. 2011)).

Plaintiff alleges in the FAC that Toshiba "report[ed] the Laptops' battery life to third party retailers using the results from the Laptops' MM07 testing with the intention and desire that these third party retailers [] convey to consumers the Laptop's alleged battery life, while failing to disclose that the represented battery life was derived" with the Laptop's monitor set to "the brightness of 20% to 30% of [the] normal level," the "Wi-Fi, Bluetooth, and other wireless functions [] disabled," and the "main processor chip [] set to 5% to 7.5% of its normal capacity." (FAC ¶¶ 66, 26.) With respect to Best Buy, Plaintiff alleges that "Best Buy represented Plaintiff's Laptop battery life to be 'up to 3.32 hours'" without providing "any explanation as to

how the 'up to' hours was calculated or determined," and despite the fact that this battery life was obtained with the Laptop's monitor set to "the brightness of 20% to 30% of [the] normal level," the "Wi-Fi, Bluetooth, and other wireless functions [] disabled," and the "main processor chip [] set to 5% to 7.5% of its normal capacity." (FAC ¶¶ 44, 45, 26.) These allegations are "sufficient[ly] detail[ed] . . . to give us some assurance that [Plaintiff's] theory has a basis in fact." Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 989—90 (9th Cir. 2008). They also provide Defendants "'notice of the particular misconduct which is alleged . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Bly—Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)); see also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1298 (3d ed. 2012) ("Perhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) . . . is the determination of how much detail is necessary to . . . enable [an adverse] party to prepare a responsive pleading."). "Rule 9(b) requires no more." Berson, 527 F.3d at 990. Accordingly, this portion of Defendants' motion is denied.

### 2. Fraudulent Affirmative Misrepresentations

Defendants seek dismissal of Plaintiff's affirmative misrepresentation claims alleged under the UCL and CLRA. Defendants argue, based on the Ninth Circuit's unpublished disposition in Maloney v. Verizon Internet Services, Inc., Plaintiff could not have been reasonably deceived by the Laptop's product tag, which stated the Laptops have a battery life of "up to 3.32 hours." (Mot. 4:26—5:2.) In Maloney, defendants "stated that a subscriber [to its Internet service]

would receive Internet service at a speed 'up to 3 Mbps.'" Maloney, 413
Fed. App'x 997, 999 (9th Cir. 2011). The defendants' Terms of Service
contract in Maloney also promised that defendants would provide
"'qualified [high-speed Internet] lines at the maximum line rate
available to your location,'" but that "[t]he speed of the Service will
vary based on network or Internet congestion, your computer
configuration, the condition of your telephone line and the wiring
inside your location, among other factors.'" Id. Maloney argued that
defendants violated the UCL and CLRA since her Internet service was only
provided at a rate of 1.792 Mbps, "the maximum line rate available at
[her] location." Id. The Ninth Circuit affirmed the district court's
dismissal of Maloney's claims, stating that "[a] reasonable consumer
would not have been deceived by [d]efendants' statements, which included
the qualifier 'up to' (meaning the same or less than) and an explanation
that each consumer's maximum speed would vary depending on several
listed customer—specific factors, including factors that applied to
[p]laintiff." Id. Defendants here argue that, as in Maloney, "[t]he
qualifier 'up to' put [P]laintiff on notice that his battery life would
be 'the same *or less than*' 3.32 hours," that Plaintiff "ignores the
words 'up to' as if they were not present," and that Best Buy's website
provided "precisely the type of disclosure that the Ninth Circuit relied
upon . . . in Maloney." (Mot. 5:17—19, 6:9—10.)

Plaintiff distinguishes Maloney, arguing that both the
district court and the Ninth Circuit decisions in Maloney relied not
only on the "up to 3.0 Mbps" representation, but also on the fact that
Maloney, unlike Plaintiff, "received clear notice from the Terms of
Service (which she admitted reading prior to purchase [and which she was
required to read prior to receiving service]) that . . . her

circumstances [including her maximum line rate could] preclude her from receiving the represented maximum internet speed." (Opp'n 11:14—18.) Plaintiff argues _Maloney_ is inapplicable since the "up to" language there was accompanied and "reinforced by the [Terms of Service] to which a customer would have to agree before receiving internet service," _Maloney_, No. ED CV 08-1885-SGL(AGRx), 2009 WL 8129871, at *5 (C.D. Cal. Oct. 4, 2009), whereas here, by contrast, Plaintiff "had _no notice_, with the words 'up to' or otherwise, that he would _never_ be able to achieve the represented maximum battery duration . . . outside of the MM07 settings in which [the Laptop] was tested." (Opp'n 11:26—12:1.) Defendants dispute Plaintiff's contention that the _Maloney_ decisions relied on the Terms of Service disclosures, inveighing that this view is "simply wrong," and arguing that "[i]n any event, Best Buy made virtually identical disclosures" on its website to those provided in _Maloney_.(Reply 3:21—23, 4:3—4.)

Plaintiff also argues that "the California Court of Appeals [] rejected the very 'up to' argument Defendants advance here" in _Consumer Advocates v. Echostar Satellite Corporation_. (Opp'n 9:26—27 (citing 113 Cal. App. 4th 1351 (2003)).) In _Echostar_, the defendants represented that a consumer could view its television program schedule "'up to 7 days in advance'" but "the on-screen guide allowed consumers to see the schedule at most only two or three days in advance." _Echostar_, 113 Cal. App. 4th at 1353, 1357. Defendants argued that their "up to" statement "only meant that the system had the _capacity_ to show the schedule seven das in advance." _Id._ at 1362. The Court of Appeals rejected this argument and reversed the grant of summary judgment for defendants, holding that defendants' interpretation of "up to 7 days" constitutes a "possible, if technical, interpretation[] of the statement[], but we

cannot say that there is no triable issue on whether [it is] untrue or misleading." Id. Plaintiff relies on Echostar as support for his contention that "even if the Laptops have the *capacity* to reach the represented maximum battery life" under the exact circumstance of the MM07 test, Plaintiff "has sufficiently stated a claim under the CLRA and UCL by alleging" that Defendants' representations are "based on a false and deceptive standard" and are likely to deceive the ordinary consumer. (Opp'n 10:9—13.) Defendants rejoin that the Court should "follow Maloney—more recent, federal authority that is directly on point-[rather than]. . . the intermediate state court appellate ruling in Consumer Advocates." (Reply 5:16—18.)

Under the UCL, "[a] 'reasonable consumer' standard applies when determining whether a given claim is misleading or deceptive." Colgan v. Leatherman Tool Grp., 135 Cal. App. 4th 663, 682 (2006). UCL liability exists not only for untrue representations, but also for a "'perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer.'" Morgan v. AT & T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1255 (2009) (quoting McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1471 (2006)). Thus a statement that "'may be accurate on some level, but will nonetheless tend to mislead or deceive'" is actionable under the UCL. Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 253 (2011) (quoting McKell, 142 Cal. App. 4th at 1471); Day v. AT & T Corp., 63 Cal. App. 4th 325, 332—33 (1998). Further, the UCL is "intentionally broad" and "sweeping" to confer on courts "broad equitable powers to remedy violations" and protect consumers. In re First Alliance Mortg. Co., 471 F.3d 977, 995 (9th Cir. 2006); ABC Int'l Traders, Inc. V. Matsushita Elec. Corp., 14 Cal. 4th 1247, 1270 (1997).

1    The same reasonable consumer standards applicable to
2  Plaintiff's UCL claim apply to his CLRA claim. <u>See</u> <u>Klein</u>, 202 Cal. App.
3  4th at 1382; <u>Echostar</u>, 113 Cal. App. 4th at 1360. Like the UCL, the CLRA
4  is also "to be 'liberally construed and applied to promote its
5  underlying purposes'" of consumer protection. <u>Colgan</u>, 135 Cal. App. 4th
6  at 680 (quoting Cal. Civ. Code § 1760).

7    In this case, Plaintiff believed that the battery life listed
8  on the Laptop was stated in a manner that conveyed that it "was
9  reflective of how long Plaintiff could expect his Laptop to operate."
10  (FAC ¶ 12). Defendants counter that this belief was "unreasonable as a
11  matter of law" since a reasonable consumer would not be deceived by a
12  representation containing the phrase "up to." (Mot. 5:16—20.) However,
13  multiple courts have found that "up to" representations may materially
14  mislead reasonable consumers. <u>See, e.g.</u>, <u>Bruno v. Quten Research Inst.,</u>
15  <u>LLC</u>, 280 F.R.D. 524, 537 (C.D. Cal. 2011) (certifying Rule 23 class
16  action under the UCL and CLRA where "the central predominating question
17  is whether Defendants' marketing statements about 'up to 6X BETTER
18  ABSORPTION' or 'effectiveness' [are] materially misleading"); <u>Walter v.</u>
19  <u>Hughes Commc'ns, Inc.</u>, 682 F. Supp. 2d 1031, 1043 (N.D. Cal. 2010)
20  (denying defendants' motion to dismiss plaintiffs' UCL and CLRA claims
21  where plaintiffs allege they were "unable to experience the [peak hour]
22  speeds that [defendants] had advertised its service as reaching 'up to,'
23  even during non-peak hours"); <u>Thompson Med. Co., Inc. v. Ciba-Geigy</u>
24  <u>Corp.</u>, 643 F. Supp. 1190, 1200 (S.D.N.Y. 1986) (enjoining defendant from
25  representing that "thousands of consumers have reported to us that they
26  lost up to 5 lbs. the first week" since, although this "may be literally
27  true," it leads "consumers [to] believe they will lose 5 lbs. or more"
28  making the claim "unquestionably false and misleading"); <u>Echostar</u>, 113

Cal. App. 4th at 1362 (reversing grant of summary judgment for defendants since "we cannot say that there is no triable issue on whether [defendants' 'up to' representation is] untrue or misleading").

Here, Defendants have not shown that Plaintiff's alleged belief was unreasonable as a matter of law or was "predicated on a strained and unjustified interpretation" of the product tag statement or battery representations. O'Shea v. Epson Am., Inc., No. CV 09-8063 PSG (Cwx), 2011 WL 3299936, at *9 (C.D. Cal. July 29, 2011). Unlike in Maloney, where the plaintiff read and was required to read defendants' disclosures, and where it was not alleged that no consumers would reach the represented internet speeds, here, no disclosures accompanied Best Buy's product tag and Plaintiff does allege that all of the Laptops have an "actual battery life [of] substantially less than that which was represented by Defendants." (FAC ¶ 3; see also id. ¶¶ 39, 50.) Thus "[r]easonable minds could [] differ" as to whether the words "up to," without more, put Plaintiff on notice that his Laptop would never achieve close to the represented 3.32 hours of battery life. Miletak v. Allstate Ins. Co., No. C 06-03778 JW, 2010 WL 809579, at *7 (N.D. Cal. Mar. 5, 2010). Accordingly, since "a reasonable interpretation of ['up to'] could encompass [Plaintiff's belief], the Court concludes that a fact question remains[,] as in Echostar," Silicon Image, Inc. v. Analogix Semiconductor, Inc., 642 F. Supp. 2d 957, 969 (N.D. Cal. 2008), and that Defendants have not shown that the allegations in the FAC fail to state a plausible claim for relief. Accordingly, this portion of Defendants' dismissal motion is denied.

### 3. Fraudulent Omissions

Defendants seek dismissal of Plaintiff's fraudulent omission claims alleged under the UCL and CLRA, arguing that the allegedly

15

omitted information was neither material, contrary to Defendants' battery life representation, nor subject to a duty to disclose. (Mot. 7:2—11:15.) Plaintiff does not contend that the allegedly omitted information was contrary to the "up to 3.32 hours" representation, but rather argues that the omitted information was material and that Defendants were subject to a duty to disclose. (Opp'n 13:25—19:19.)

### i. Materiality

Defendants dispute the materiality of the omitted battery testing information, arguing that it is not material since "members of the public [do not] hold expectations about the 'nit' levels, wireless functions, processor chip capacity, or PDF read-rate used to calculate a maximum potential battery life." (Mot. 8:23—25.) Plaintiff counters that the omitted information is material since "the battery life of laptops and notebooks is one of the primary factors consumers consider when determining which laptop to purchase," (Opp'n 14:21—23), and "Plaintiff paid more for his Laptop than he would have paid" due to Defendants' omissions. (FAC ¶ 15.)

In California, a misrepresentation is material "if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action.'" Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 332 (2011) (quoting Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 977 (1997)). "[A]s such materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'" In re Tobacco II Cases, 46 Cal. 4th 298, 327 (2009) (quoting Engalla, 15 Cal. 4th at 977); see also Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1022 (9th Cir. 2011) (recognizing the same); Engalla, 15 Cal. 4th at 978 (considering whether

defendant's representations were "'so obviously unimportant' as to render them immaterial as a matter of law").

Plaintiff alleges that  he was "induced to purchase the Laptop[]" and "paid more for his Laptop than he would have paid" otherwise due to Best Buy's unqualified statement that the Laptop had a battery life of "up to 3.32 hours." (FAC ¶ 4, 11, 15.) Plaintiff further alleges:

> Portability is one of the key features for consumers purchasing a laptop or notebook computer, as consumers often take their laptops and notebooks to locations without electrical outlets, such as coffee shops, college classes, airplanes, commuter trains, and public parks.

> When a consumer uses a laptop computer or notebook without an electrical outlet power source, the computer uses the electrical power from the laptop's built-in computer battery. Accordingly, the battery life of laptops and notebooks is one of the primary factors consumers consider when determining which laptop to purchase.

(FAC ¶¶ 21, 22.) Given these allegations, Defendants have not shown that Plaintiff did not reasonably "'attach importance to [the] existence [of the battery life representations] in determining his choice of action.'" Kwikset Corp., 51 Cal. 4th at 332 (quoting Engalla, 15 Cal. 4th at 977). Accordingly, this portion of Defendants' dismissal motion is denied.

### ii. Duty to Disclose

The parties argue that "[u]nder California law, there are four circumstances in which an obligation to disclose may arise: '(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.'" Smith v. Ford

<span>1</span> <u>Motor Co.</u>, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (quoting <u>LiMandri</u>

<span>2</span> <u>v. Judkins</u>, 52 Cal. App. 4th 326, 336 (1997)); <u>see also</u> Mot. 8:9—13

<span>3</span> (same); Opp'n 16:19—24 (same).[2] Plaintiff argues "Defendants' [had a]

<span>4</span> duty to disclose under the last three circumstances." (Opp'n 16:25.) The

<span>5</span> same showing is required to plead a duty to disclose under the UCL and

<span>6</span> the CLRA. <u>Baba v. Hewlett-Packard Co.</u>, No. C 09-05946 RS, 2010 WL

<span>7</span> 2486353, at *7 (N.D. Cal. June 16, 2010).

<span>8</span>     **(a) Exclusive Knowledge**

<span>9</span>        Defendants argue that Plaintiff cannot successfully allege

<span>10</span> Defendants' exclusive knowledge since Plaintiff admits in the FAC that

<span>11</span> Best Buy's website disclosed the use of MM07 testing and that <u>Newsweek</u>

<span>12</span> published an article publicly criticizing the MM07 test for the same

<span>13</span> reasons raised here by Plaintiff. (Mot. 10:5—11 (citing FAC ¶¶ 31—33).)

<span>14</span> Plaintiff responds that Defendants had exclusive knowledge of the MM07

<span>15</span> DVD, Productivity, and Reader test results since the "results of the[se]

<span>16</span> tests are [still] not available in the public domain," and this

<span>17</span> exclusive and "superior" knowledge gave rise to Defendants' duty to

<span>18</span> disclose. (Opp'n 17:7—8.) Defendants counter that Plaintiff cannot

<span>19</span> establish their exclusive knowledge based on a theory "that is never

<span>20</span>

<span>21</span> ───────────────

<span>22</span>     [2] The California Courts of Appeal are split on whether these factors—which are outlined in <u>Judkins</u>, a fraudulent concealment

<span>23</span> case—properly apply to UCL and CLRA omission claims. <u>Compare</u> <u>Collins v. eMachines, Inc.</u>, 202 Cal. App. 4th 249, 255—56 (2011) (applying the

<span>24</span> <u>Judkins</u> factors to find duty to disclose under CLRA), <u>with</u> <u>Buller v. Sutter Health</u>, 160 Cal. App. 4th 981, 988 n.3 (2008) ("respectfully

<span>25</span> disagree[ing]" with the application of the <u>Judkins</u> factors to UCL and CLRA omission claims to the extent that they compel a duty to disclose).

<span>26</span> However, since both parties adopt the <u>Judkins</u> factors in their briefs, the applicable standard is not decided in this ruling. <u>See generally</u>

<span>27</span> <u>Donohue v. Apple, Inc.</u>, 871 F. Supp. 2d 913, 925 n.5 (N.D. Cal. 2012) (declining to consider a limitation on liability under the CLRA and UCL

<span>28</span> since "neither party has addressed [the issue] and [defendant] has not moved to dismiss on this ground").

pled in the FAC." (Reply 8:3.) Specifically, Defendants argue that the FAC concerns disclosure of the MM07 test *conditions*, but Plaintiff now improperly attempts to establish Defendants' duty to disclose based on Defendants' exclusive knowledge of the test *results*. (Reply 8:2—3.)

A defendant has exclusive knowledge giving rise to a duty to disclose when "according to the complaint, [defendant] knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 256 (2011); see also Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1096—97 (N.D. Cal. 2007) (finding exclusive knowledge because defendant had access to significant data unavailable to the public about the defect, and because "customers only became aware of the problem if they actually experienced it first-hand"); Warner Constr. Corp. v. City of L.A., 2 Cal. 3d 285, 294 (1970). "[G]eneralized allegations with respect to exclusive knowledge" are insufficient to defeat a dismissal motion. Hovsepian v. Apple, Inc., No. 08-5788 JF (PVT), 2009 WL 5069144, at *3 (N.D. Cal. Dec. 17, 2009).

Here, Plaintiff could have readily recognized any deficiencies in his Laptop's battery life, and "Plaintiff[] purchased [his Laptop] more than [nine months] after information [criticizing MM07] was disseminated." Gray v. Toyota Motor Sales, U.S.A., No. CV-08-1690 PSG (Jcx), 2012 WL 313703, at *8 (C.D. Cal. Jan. 23, 2012). Accordingly, "[b]ased on Plaintiff['s] own allegations, Plaintiff[ has] not alleged facts that show [Defendants] had exclusive knowledge of the [omitted] material facts and that Plaintiff[] could not have reasonably discovered such facts." Wolph v. Acer Am. Corp., No. C 09-01314 JSW, 2009 WL 2969467, at *4 (N.D. Cal. Sept. 14, 2009); see also Stickrath v.

Globalstar, Inc., No. C07-1941 THE, 2008 WL 344209, at *4 (N.D. Cal. Feb. 6, 2008).

Nor can Defendants' concealment of the DVD, Reader, and Productivity test results give rise to a duty to disclose, since Plaintiff does not allege that he was misled by Defendants' failure to disclose these test *results*. Rather, Plaintiff consistently alleges that he was misled because Defendants concealed or failed to disclose that the Laptop's battery life was calculated with "(i) its screen set to 60 nits; (ii) its Wi-Fi, Bluetooth, and other wireless functions disabled; and (iii) its main processor chip set to 5% to 7.5% of its normal capacity." (FAC ¶ 15; see also id. ¶¶ 2, 13, 37, 42, 49, 53, 58, 66, 78.) Accordingly, this portion of the dismissal motion is granted.

**(b) Active Concealment**

Defendants argue Plaintiff's "bare assertion" that Toshiba and Best Buy "actively concealed material facts from Plaintiff and the CLRA Subclass" is insufficient to state an active concealment duty to disclose. (Mot. 10:26.) Plaintiff responds that he "has pled sufficient facts to allege active concealment" by alleging that "'the results of all three tests (DVD, Productivity, and Reading)'" have not been published. (Opp'n 18:5—6, 17:27—28 (quoting FAC ¶ 34).) Defendants respond that Plaintiff cannot predicate a duty to disclose on concealment of the test *results*, since Plaintiff "does not allege [that] *in the FAC*." (Reply 9:3.) Defendants also retort that it is "nonsense" to "suggest that facts that were publicly disclosed in Newsweek and on [D]efendants' websites were 'actively concealed.'" (Reply 8:25—9:1.)

Mere nondisclosure does not constitute active concealment. See, e.g., Gray, 2012 WL 313703, at *9; Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n, Inc., 171 Cal. App. 4th 1356, 1382

(2009); <u>Lingsch v. Savage</u>, 213 Cal. App. 2d 729, 734 (1963). Rather, to state a claim for active concealment, Plaintiff must allege specific "affirmative acts on the part of the [D]efendants in hiding, concealing or covering up the matters complained of." <u>Lingsch</u>, 213 Cal. App. 2d at 734 (concluding complaint alleges "mere nondisclosure, rather than active concealment" since it fails to allege such affirmative acts). As with exclusive knowledge, "generalized allegations with respect to . . . active concealment" will not do. <u>Hovsepian</u>, 2009 WL 5069144, at *3.

Here, Plaintiff's only active concealment allegation is the conclusory assertion that Defendants "actively concealed material facts from Plaintiff and the Class." (FAC ¶¶ 41, 52.) This active concealment "allegation[ is] deficient [since Plaintiff] fails to allege any specific facts demonstrating that . . . [Defendants] *actively* tried to conceal the existence of the [MMM07 testing or test conditions]." <u>Gerawan Farming, Inc. v. Rehrig Pac. Co.</u>, 1:11-CV-01273 LJO BAM, 2012 WL 691758, at *9 (E.D. Cal. Mar. 2, 2012). Accordingly, this portion of Defendants' dismissal motion is granted.

**(c) Partial Representation**

Toshiba argues that "Plaintiff has not alleged particularized facts supporting . . . a duty to disclose" by Toshiba based on a partial representation theory. (Mot. 8:14–15.) Since Plaintiff does not allege any representations made by Toshiba to Plaintiff, this portion of Toshiba's dismissal motion is granted. Accordingly, since Plaintiff fails to plead a duty to disclose by Toshiba under any theory, Plaintiff's CLRA fraudulent omission claim against Toshiba is dismissed.

Best Buy also contends that Plaintiff "has not pled a partial representation related to the allegedly omitted test conditions" since

Plaintiff "does not allege that [Best Buy] made *any* specific representations regarding battery test conditions." (Mot. 11:10—12.) Plaintiff rejoins that, given the MM07 testing conditions, "representing the maximum battery life [of the Laptops as 'up to 3.32 hours'] was deceitful and misleading" and gave rise to a partial representation duty to disclose. (Opp'n 18:19—20.)

A partial representation claim may arise when "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." Warner Constr. Corp., 2 Cal. 3d at 294; Roddenberry v. Roddenberry, 44 Cal. App. 4th 634, 666 (1996). Thus a defendant may not "suppress or conceal any facts within his knowledge which materially qualify those stated." Mktg. W., Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th 603, 613 (1992); see also Vega v. Jones, Day, Reavis & Pogue, 121 Cal. App. 4th 282, 292 (2004).

Here, Best Buy's product tag listed the Laptop's battery life as "up to 3.32 hours." (FAC ¶ 44.) The product tag did not provide "any explanation as to how the 'up to' hours was calculated or determined," and "there was no disclaimer, qualifier, or other language." (Id. ¶¶ 45, 12.) Given Plaintiff's allegation that a reasonable consumer could not expect to experience this battery life, (id. ¶ 58d), or "even close" to this battery life, (id. ¶ 14), Plaintiff has pled a duty to disclose based on partial representation. See generally In re Apple In-App Purchase Litig., 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012) (finding partial representation where defendant represented its iPhone app was free, made no representations about the potential for in-app purchases, and permitted players to make in-app purchases for a fifteen-minute period after  entering a password); Goldsmith v. Allergan, Inc., No. CV

09-7088 PSG (Ex), 2011 WL 2909313, at *5 (C.D. Cal. May 25, 2011) (finding partial representation where defendant made "literal[ly]" true product representation but a reasonable consumer could not use the product in the manner represented). Accordingly, this portion of Best Buy's dismissal motion is denied.

## C. Best Buy's Unlawful or Unfair Acts or Practices

In addition to his UCL fraud claim, Plaintiff also alleges that Best Buy violated the unlawful and unfair prongs of the UCL. (FAC ¶¶ 94, 95.) Under the UCL's "unlawful" prong, violations of other laws are "borrowed" and made independently actionable under the UCL. Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). CLRA violations may serve as the predicate for "unlawful" business practice actions under the UCL. Collins, 202 Cal. App. 4th at 258. Since Plaintiff has pled a CLRA claim against Best Buy, see supra, Plaintiff states a claim for unlawful conduct under the UCL against Best Buy as well.

Under the UCL's "unfair" prong, the test for liability in consumer suits is "in flux." Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 735 (9th Cir. 2007). Previously, to determine whether a business practice was "unfair," California courts applied a balancing test "weigh[ing] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." S. Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886 (1999). The Supreme Court of California subsequently rejected this approach in an anticompetitive practices case, where it instead held that an "unfair" business practice claim must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." Cel-Tech Commc'ns, 20 Cal. 4th at 186—87. While criticizing consumer

cases applying the former balancing test, id. at 184—85, the Court nonetheless expressly limited its holding to anticompetitive practices cases, stating that "[n]othing we say relates to actions by consumers." Id. at 187 n.12. Following Cel-Tech, a split of authority developed concerning the standard for consumer claims under the unfairness prong of the UCL. Compare Mlejnecky v. Olympus Imaging Am. Inc., No. 2:10-CV-02630 JAM-KJN, 2011 WL 1497096, at *7 (E.D. Cal. Apr. 19, 2011) (adopting the balancing test), with Jackson v. Ocwen Loan Servicing, LLC, No. 2:10-cv-00711-MCE-GGH, 2011 WL 587587, at *4 (E.D. Cal. Feb. 9, 2011) (applying the tethering test), with Chang Bee Yang v. Sun Trust Mortg., Inc., No. 1:10-CV-01541 AWI SKO, 2011 WL 3875520, at *8 (E.D. Cal. Aug. 31, 2011) (applying both tests); see generally Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1273—74 (2006) (discussing the split and the reasons for the split).

The applicable test need not be decided here since Plaintiff fails to plead a claim under either standard. Under the South Bay Chevrolet balancing test, Plaintiff has not shown that "the gravity of the harm" he alleges outweighs "the utility of the [D]efendant's conduct." 72 Cal. App. 4th at 886. Since Plaintiff refused to return his Laptop for a full refund, his harm was avoidable, and likely "any harm he suffered was the product of his own behavior," rather than Best Buy's actions. Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1170 (9th Cir. 2012). "Meanwhile, any harm [to Plaintiff] is offset by Best Buy's strong justification" for relying on the MM07 test. Id. As Best Buy argues, if it had "used a different benchmark, it [c]ould have impaired, not improved, [Plaintiff's] ability to make a meaningful comparison between different computers" because MM07 is the industry-standard benchmark for measuring battery life on all manner of laptops, leaving

Plaintiff less able to choose a computer than without the benchmark. (Mot. 1:21—23.) In light of these concerns, under the <u>Cel-Tech Communications</u> tethering test, Plaintiff also fails to allege that Best Buy's conduct was "contrary to the 'spirit'" of the CLRA's legislatively declared policy of consumer protection. <u>Tourgeman v. Collins Fin. Servs., Inc.</u>, No. 09-CV-01392-JNS-NLS, 2009 WL 6527757, at *7 (S.D. Cal. Aug. 6, 2009). Accordingly, Best Buy's dismissal motion on Plaintiff's unlawful UCL claim is denied, and its motion on Plaintiff's unfair UCL claim is granted.

### IV. CONCLUSION

For the reasons stated, Plaintiff's unlawful, unfair, and fraudulent UCL claims against Toshiba and his fraudulent omission CLRA claim against Toshiba are dismissed. Plaintiff's unfair UCL claim against Best Buy and his fraudulent omission CLRA claim against Best Buy based on Best Buy's exclusive knowledge and active concealment are dismissed. The remainder of the dismissal motion is denied. Plaintiff is granted fifteen (15) days leave from the date on which this Order is filed to file an amended complaint amending the dismissed claims.

Dated:  February 13, 2013

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge