UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD HERRON, individually, on behalf of himself and all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>BEST BUY STORES, LP, a Virginia limited partnership; BESTBUY.COM, LLC, Virginia limited liability company; TOSHIBA AMERICA INFORMATION SYSTEMS, INC., a California corporation; and DOES 3-100, inclusive,<br><br>   Defendants. | No. 12-cv-02103-GEB-JFM<br><br>**ORDER DENYING TOSHIBA'S MOTION TO DISMISS AND BEST BUY STORES AND BESTBUY.COM'S MOTION TO STRIKE** |

Defendant Toshiba America Information Systems, Inc. ("Toshiba") moves to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure ("Rules") 9(b) and 12(b)(6). Defendants Best Buy Stores, LP ("Best Buy Stores") and Bestbuy.com, LLC ("Bestbuy.com") separately move to strike Plaintiff's class allegations under Rule 12(f). Plaintiff opposes each motion.

**I. FACTUAL ALLEGATIONS**

Plaintiff alleges the following in his Second Amended Class Action Complaint ("SAC"). On December 15, 2009, after

1

looking at the product tags for various laptops, Plaintiff purchased a Toshiba Satellite L505 Laptop from a Best Buy Stores retail store in Folsom, California. (SAC ¶¶ 10-12 & Ex. D.) Best Buy Stores displays each of its laptops with a "'product tag,' which contains the price and a brief description of the features of the laptop." (SAC ¶ 43.) "One prominent feature is 'Battery.'" (Id. ¶ 43.) "Best Buy [Stores] represented Plaintiff's Laptop battery life to be 'up to 3.32 hours.'" (Id. ¶ 44.) Best Buy Stores did not provide "any explanation as to how the 'up to' hours was calculated or determined on the product tag or elsewhere" in the store, and "there was no disclaimer, qualifier, or other language." (Id. ¶¶ 45, 14.)

Plaintiff "decided to purchase the Toshiba Satellite L505 [Laptop] based substantially on his reliance on the representation that the battery life for that model was 'up to 3.32 hours.'" (Id. ¶ 12.) "Plaintiff . . . believed that the represented battery life of 'up to 3.32 hours' was reflective of how long Plaintiff could expect his Laptop to operate when being powered solely by its battery." (Id. ¶ 13.) In fact, "[i]n the years since Plaintiff purchased his Laptop, he has never once achieved even close to the represented 3.32 hours of battery life." (Id. ¶ 15.)

Toshiba uses the MobileMark 2007 ("MM07") benchmark test to measure the battery life of its Toshiba L505 Laptops.

2

(Id. ¶ 37.) During the test, the computer's monitor is set to 60 nits, or "the brightness of 20% to 30% of [the] normal level." (Id. ¶ 28.) Meanwhile, "the computer's Wi-Fi, Bluetooth, and other wireless functions are disabled so the computer is not drawing power from the battery to perform these functions," and the computer's "main processor chip is set to 5% to 7.5% of its normal capacity" so that it "is essentially running in an idle state." (Id. ¶¶ 29, 30.) Three separate performance tests are then administered: (1) a DVD test where "a DVD movie is played until the battery dies," (2) a productivity test where the computer "perform[s] common office activities" such as data processing, and (3) a reading test where the computer "read[s] a PDF document pausing [for] two minutes on each page." (Id. ¶ 31(a)—(c).) "MM07 does not provide an 'overall' rating; rather, the computer is given three scores, one for each category (DVD, Productivity, and Reader). The laptop manufacturer or retailer may choose which score to report to consumers." (Id. ¶ 32.)

"Toshiba conveys the results of the Laptop's MM07" test to "third party retailers, such as Best Buy [Stores] . . . with the intention and desire that these third party retailers will, in turn, represent to consumers these results." (Id. ¶ 38.) Since MM07 testing bears "no resemblance to the real-life and everyday uses of laptop computers and notebooks," the Laptop's actual battery life is "significantly less" than that which was

1  represented by Defendants. (Id. ¶¶ 33, 5.)

2        On its website, Bestbuy.com describes each of its laptops' specifications, including their battery lives. (Id. ¶¶ 46–48.) "[E]ach laptop's battery life is represented as being 'up to' a specified number of hours." (Id. ¶ 46.) Customers can click on this battery life representation to display a pop-up box. (Id. ¶ 47.) The pop-up box states:

> Battery Life
> Battery life tested using MobileMark 2007. Battery life will vary depending on the product configuration, product model, applications loaded on the product, power management setting of the product, and the product features used by the customer. As with all batteries, the maximum capacity of this battery will decrease with time and usage.

(Id. ¶ 47.) "Other than the statement that the Laptop's battery life was tested using MobileMark 2007 . . . there is not any explanation [on the Bestybuy.com website] as to how the 'up to' hours was calculated or any other information." (Id. ¶ 48.)

      "Plaintiff paid more for his Laptop than he would have paid had . . . the material fact not been concealed or omitted that the battery life for his [L]aptop was determined by testing the machine pursuant to MM07 . . . with: (i) its screen set to 60 nits; (ii) its Wi-Fi, Bluetooth, and other wireless functions disabled; and (iii) its main processor chip set to 5% to 7.5% of its normal capacity." (Id. ¶ 15.) On behalf of himself, and a proposed class and subclass of California consumers, Plaintiff

4

alleges claims against each Defendant under the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9), and against Best Buy Stores and Bestbuy.com under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (Id. ¶¶ 58-94.)

## II. LEGAL STANDARD

**A. Rule 12(b)(6)**

Decision on a Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim under Rule 12(b)(6), "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks omitted). However, this tenet does not apply to "legal conclusions . . . cast in the form

5

of factual allegations." Id. (internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (internal quotation marks omitted); see also Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

**B. Rule 12(f)**

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Since interpretation of the Rule begins with its plain meaning, a motion to strike will not be granted unless the matter to be stricken is "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973-74 (9th Cir. 2010).

As the movants, Defendants bear the burden on their motions to strike, SEC v. Sands, 902 F. Supp. 1149, 1166-67 (C.D. Cal. 1995), and their motions will not be granted unless the matter to be stricken could have no possible bearing on the controversy. Neveu v. City of Fresno, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005); see Nat'l Res. Def. Council v. Kempthorne, 539 F. Supp. 2d 1155, 1162 (E.D. Cal. 2008) (noting such motions are disfavored and infrequently granted). Further, when ruling on the

motions to strike, the court accepts Plaintiff's allegations as true and liberally construes the complaint in the light most favorable to Plaintiff. <u>Stearns v. Select Comfort Retail Corp.</u>, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010); <u>Multimedia Patent Trust v. Microsoft Corp.</u>, 525 F. Supp. 2d 1200, 1211 (S.D. Cal. 2007); <u>Lazar v. Trans Union LLC</u>, 195 F.R.D. 665, 669 (C.D. Cal. 2000).

### III. DISCUSSION

**A. Toshiba's Dismissal Motion**

Toshiba seeks dismissal of Plaintiff's CLRA claim against it, arguing that Plaintiff fails to allege (1) "any CLRA 'transaction'" with Toshiba, (2) "exposure to or reliance on any representation" directly made by Toshiba, or (3) Toshiba's "participation and control" over Best Buy Stores' representations. (Toshiba's Corrected Mot. to Dismiss, ECF No. 34, 1:11-13.)

**(1) Transactions with Toshiba**

Toshiba argues that Plaintiff's claim fails because "there was no 'transaction' between [Toshiba] and [P]laintiff," since the "only 'transaction' alleged is [P]laintiff's purchase of a [Toshbia Satellite L505 L]aptop from Best Buy [Stores]." (Toshiba's Mot. to Dismiss Second Am. Compl. ("Toshiba's Mot."), ECF No. 30, 4:16-17.) Plaintiff responds that "the CLRA does not require contractual privity," and thus "'a cause of action under

7

the CLRA may be established independent of any contractual relationship between the parties.'" (Pl.'s Opp'n to Toshiba's Mot. to Dismiss, ECF No. 41, 9:13, 9:23-24 (citing McAdams v. Monier, Inc., 182 Cal. App. 4th 174, 186 (2010)).)

The CLRA prohibits unfair or deceptive practices arising from "a transaction *intended to result or which results in* the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1760 (emphasis added). Thus the CLRA does not limit liability to "a defendant who directly engaged in a completed transaction with a plaintiff." Chamberlan v. Ford Motor Co., No. No. C 03-2628 CW, 2003 WL 25751413, at * (N.D. Cal. Aug. 6, 2003) (rejecting defendant's argument that the CLRA applies only "in the context of a transaction between the plaintiff and the defendant"); Keilholtz v. Sup. Fireplace Co., No. C 08-00836 CW, 2009 WL 839076, at *3-4 (N.D. Cal. Mar. 30, 2009) (rejecting defendants' argument that "a CLRA claim can be asserted only against defendants who sell goods or services directly to consumers"); see also In re NVIDIA GPU Litig., No. C 08-04312 JW, 2009 WL 4020104, at *10 (N.D. Cal. Nov. 19, 2009) (denying CLRA dismissal motion against manufacturer who was not in contractual privity with plaintiffs). Accordingly, this portion of Toshiba's dismissal motion is denied.

**(2) Representations by Toshiba**

Toshiba also argues that Plaintiff "fails to allege

8

that [Toshiba] made *any* representation *to [P]laintiff*, as required to establish direct liability [for fraudulent affirmative misrepresentations] under the CLRA." (Toshiba's Mot. 1:11-12.) However, Toshiba failed to squarely raise this argument in its initial dismissal motion, even though the argument was available to Toshiba when it originally sought to dismiss Plaintiff's complaint. (See Mot. to Dismiss First Am. Compl., ECF No. 7, 6:15-16 (arguing principally that "[b]ecause a reasonable consumer would not be deceived[ by the representations], there can be no liability").) Under Rule 12(g), "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Thus "a series of [Rule 12(b)(6)] motions should not be permitted because that results in delay and encourages dilatory tactics." Aetna Life Ins. Co. v. Alla Med. Servs., Inc., 855 F.2d 1470, 1475 n.2 (9th Cir. 1988); see Fed. Agr. Mortg. Corp. v. It's a Jungle Out There, Inc., No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) ("[T]he weight of authority . . . holds that where the complaint is amended after the defendant has filed a Rule 12(b) motion, the defendant may not thereafter file a second Rule 12(b) motion asserting objections or defenses that could have been asserted in the first motion."). Accordingly, this portion of Toshiba's dismissal motion is not considered.

**(3) Participation and Control by Toshiba**

Toshiba argues that the UCL's "'participation and control' standard applies to CLRA claims," and Plaintiff has not met this standard. (Toshiba's Mot. 6:13-14.) To state a claim under the UCL, a plaintiff must allege a defendant's "personal 'participation in the unlawful practices' and 'unbridled control' over the practices." Emery v. Visa Int'l Serv. Ass'n, 95 Cal. App.4th 952, 960 (2002) (quoting People v. Toomey, 157 Cal.App.3d 1, 15 (1984)). This "personal participation . . . and unbridled control" standard developed in UCL cases nearly thirty years ago. See Emery, 95 Cal. App. 4th at 960 (enunciating the "personal participation . . . and unbridled control" standard in UCL case, without CLRA claims); Toomey, 157 Cal. App. 3d at 14—15 (articulating these criteria for first time in UCL case, where the CLRA is unmentioned). Toshiba relies on In re Jamster Marketing Litigation, No. 05cvo819 JM(CAB), 2009 WL 1456632, at *9 (S.D. Cal. May 22, 2009)) to argue that this UCL standard should be extended to CLRA claims as well. (Toshiba's Mot. 6:15-7:1.) In In re Jamster, plaintiffs' CLRA claim was dismissed because "*[p]laintiffs* fail[ed] to identify any authority permitting a CLRA claim to be maintained under a secondary liability theory," without allegations of defendants' participation and control. Id. at *9 (emphasis added). However, "defendants," and not plaintiffs, "bear all applicable burdens on

10

their motion[s] to dismiss. <u>Falcocchia v. Saxon Mortg., Inc.</u>, 709 F. Supp. 2d 873, 886 (E.D. Cal. 2010). California state courts have not extended the "personal participation . . . and unbridled control" limitation on liability to claims under the CLRA, which must be "liberally construed and applied," Cal. Civ. Code § 1760, and which contains "more extensive remedies" and provisions than the UCL. <u>Cruz v. PacifiCare Health Sys., Inc.</u>, 30 Cal. 4th 303, 316 (2003). Indeed, with the exception of <u>In re Jamster</u> and the two cases that rely on it,[1] the "personal participation . . . and unbridled control" limitation on liability has been confined to UCL claims. In this case and at this stage of the litigation, Toshiba has not shown that the personal participation and unbridled control standard applies to Plaintiff's CLRA claim. Accordingly, this portion of Toshiba's dismissal motion is denied.

**B. Best Buy Stores and Bestbuy.com's Motion to Strike**

Best Buy Stores and Bestbuy.com seek to strike Plaintiff's class allegations under Rule 12(f) "for a lack of typicality, commonality, and predominance of individual issues." (Mot. to Strike Portions of SAC ("Mot. to Strike"), ECF No. 32, 4:21-22.) Plaintiff counters that Defendants' Rule 12(f) motion is premature and improper, and should therefore be denied. (Pl.'s

---

[1] <u>See</u> <u>Yordy v. Plimus, Inc.</u>, No. C12-0229 THE, 2012 WL 2196128, at *5 (N.D. Cal. June 14, 2012); <u>In re Hydroxycut Mktg. & Sales Practices Litig.</u>, 801 F. Supp. 2d 993, 1012-13 (S.D. Cal. 2011).

Opp'n to Mot. to Strike, ECF No. 43, 2:12-28.)

Material may be stricken under Rule 12(f) only when it is "redundant, immaterial, impertinent or scandalous matter" or "an insufficient defense." Fed. R. Civ. P. 12(f); Whittlestone, Inc., 618 F.3d at 973-74. Here, Best Buy Stores and Bestbuy.com have not shown that Plaintiff's class allegations satisfy any of these "five categories" of material that may be stricken under Rule 12(f). Whittlestone, 618 F.3d at 974. Nor may Defendants' motion to *strike* be read "in a manner that allow[s them] to use it as a means to *dismiss* some or all of a pleading." Id. (emphasis added); see also Harvey v. Bank of Am., N.A., 906 F.Supp.2d 982, 996 (N.D. Cal. 2012) ("Rule 12(f) may not be used to make an end-run around Rule 12(b)(6) standards or summary judgment procedures."). Further, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977); accord Casida v. Sears Holdings Corp., 1:11-CV-01052-AWI, 2012 WL 253217, at *3 (E.D. Cal. Jan. 26, 2012) (finding "premature" defendant's motion to strike class actions since "the issue would be more properly resolved after [p]lainitff has had an opportunity to conduct discovery"). Accordingly, since it has not been shown that Rule 12(f) is an "authorized" or "proper" vehicle for the relief

sought, Yamamoto v. Omiya, 564 F.2d 1319, 1327 (9th Cir. 1977), Best Buy Stores and Bestbuy.com's motion to strike is denied.

### IV. CONCLUSION

For the stated reasons, Toshiba's dismissal motion (ECF No. 30) and Best Buy Stores and Bestbuy.com's motion to strike (ECF No. 32) are denied.

Dated: August 15, 2013

GARLAND E. BURRELL, JR.
Senior United States District Judge