UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD HERRON, individually, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BEST BUY STORES, LP, a Virginia limited partnership,<br><br>Defendant. | No. 2:12-cv-02103-TLN-CKD<br><br>**ORDER DENYING PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION** |

This matter is before the Court pursuant to Plaintiff Chad Herron's ("Plaintiff") Amended Motion for Class Certification. (Am. Mot. for Class Certification, ECF No. 188.) Defendant Best Buy Stores, LP ("Defendant") opposes the motion. (Opp'n to Am. Mot. for Class Certification, ECF No. 197.) Plaintiff has filed a reply. (Reply to Am. Mot. for Class Certification, ECF No. 202.) Further, Defendant has moved to exclude or strike opinions contained in Plaintiff's expert's report that was filed in support of Plaintiff's Amended Motion for Class Certification. (Mot. to Exclude or Strike, ECF No. 196.) Plaintiff opposes the motion. (Opp'n to Mot. to Exclude or Strike, ECF No. 200.) Defendant has filed a reply. (Reply to Mot. to Exclude or Strike, ECF No. 207.) For the reasons set forth below, the Court hereby DENIES Plaintiff's Amended Motion for Class Certification and DENIES Defendant's Motion to Exclude or Strike as moot. (ECF Nos.

1

188, 207).

I. **FACTUAL BACKGROUND**

On December 4, 2014, Plaintiff filed a Fifth Amended Complaint ("FAC"), on behalf of himself and all others similarly situated, asserting the following claims: (1) Violations of California's Consumer Legal Remedies Act on behalf of the Toshiba Satellite L505 Subclass; and (2) Violations of California's Unfair Competition Law ("UCL") on behalf of the Class. (ECF No. 94.) Plaintiff's FAC alleges the following.[1] In or about January 2010, Plaintiff went to a Best Buy retail store in Folsom, California to select and purchase a new laptop computer for his personal, household, or family use. (ECF No. 94 ¶ 10.) Each laptop on display contained a fact tag which represented, among other features, the battery life for each laptop as being "up to" a specific number of hours (or fraction thereof). (ECF No. 94 ¶ 11.) Plaintiff looked at each fact tag and decided to purchase the Toshiba Satellite L505 based substantially on his reliance on the representation that the battery life for that model was "up to 3.32 hours." (ECF No. 94 ¶ 12.) The battery life for his laptop was determined by testing the machine pursuant to MobileMark 2007 ("MM07"), which meant that it was tested with: (i) its screen set to 60 nits; (ii) its Wi-Fi, Bluetooth, and other wireless functions disabled; and (iii) its main processor chip set to 5% to 7.5% of its normal capacity. (ECF No. 94 ¶ 16.)

Plaintiff's belief that the represented battery life of "up to 3.32 hours" reflected how long Plaintiff could expect his laptop to operate when being powered solely by its battery was based largely on the fact that there was no disclaimer, qualifier, or any other language on the fact tag indicating that the represented battery life was determined by testing the laptop with: (i) its screen set to 60 nits; (ii) its Wi-Fi, Bluetooth, and other wireless functions disabled; and (iii) its main processor chip set to 5% to 7.5% of its normal capacity. (ECF No. 94 ¶¶ 13–14.) Plaintiff has never once achieved even close to the represented 3.32 hours of battery life. (ECF No. 94 ¶ 15.) The "up to" battery life representations on Defendant's fact tags are not limited to laptopts manufactured by Toshiba; rather, such representations are common and identical regardless of the manufacturer of the laptop. (ECF No. 94 ¶ 36.)

---
[1] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's FAC.

Plaintiff and the class have suffered actual damages in that they were induced to purchase laptops and pay more for the laptops than they would have had Defendant not falsely represented that the laptops had a battery life that was substantially more than the class members could reasonably expect to experience, and would actually experience, when using the laptops. (ECF No. 94 ¶ 6.) Specifically, Plaintiff paid more for his laptop than he would have paid had Defendant not misrepresented the maximum battery life or had the material fact not been concealed or omitted that the battery life for his laptop was determined by testing the machine pursuant to MM07. (ECF No. 94 ¶ 16.)

## II. Procedural History

On December 4, 2014, Plaintiff filed the FAC. (ECR No. 94.) On December 18, 2014, Defendant filed an Answer. (ECF No. 95.) On September 16, 2015, Plaintiff filed a Motion for Class Certification. (ECF No. 130.) On April 19, 2016, the Court limited Plaintiff's class to exclude "(1) laptops with a corresponding structured data filed that contains the disclaimer, and (2) Acer and Gateway laptops identified by declarant Shyu." (ECF No. 178 at 13.) However, the Court then denied Plaintiff's Motion for Class Certification with leave to amend on the grounds that Plaintiff's damage model was not tied to his theory of liability. (ECF No. 178 at 15–17.)

On June 24, 2016, Plaintiff filed the instant Amended Motion for Class Certification, proposing a new damage model and seeking to certify the following class:

> All persons who purchased at least one (1) Laptop from any one of [Defendant's] brick-and-mortar retail stores located in the State of California, during the time period stated for each Laptop as set forth in Attachment 'A', and did not subsequently return the Laptop to [Defendant].

(ECF No. 188-2 at 9.) "Excluded from the Class are: [Defendant], its officers, directors and employees, and any entity in which Defendant has a controlling interest, the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact or assignees thereof, and the Court." (ECF No. 188-2 at 9.) On August 18, 2016, Defendant filed a Motion to exclude or Strike Certain Expert Opinions. (ECF No. 196.)

## III. Legal Standard

Class certification is governed by Rule 23. "Parties seeking class certification bear the

3

burden of demonstrating that they have met each of the four requirements of [Rule] 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011) (citing *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)).

Under Rule 23(a), the party seeking certification must establish:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These requirements effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

Plaintiff relies solely on Rule 23(b)(3) of the Rule 23(b) requirements. (ECF No. 188-2 at 6.) Under Rule 23(b)(3),

> [a] class action may be maintained if Rule 23(a) is satisfied and if: . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

**IV.  ANALYSIS**

The Court previously found that Plaintiff met all requirements under Rule 23(a). While Defendant offers additional arguments as to why Rule 23(a) requirements are not satisfied, the Court finds that Plaintiff has still not satisfied the Rule 23(b) predominance requirement, and thus does not address Defendant's additional arguments. Moreover, because the Court need not analyze the Declaration of Dr. Sigurd Meldal to determine that Plaintiff has still not satisfied the Rule 23(b) predominance requirement, the Court denies Defendant's Motion to Exclude or Strike as moot.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S.

4

591, 623 (1997). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189. Class certification under Rule 23(b)(3) is proper when common questions constitute a significant portion of the case. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Rule 23(b)(3)'s predominance requirement also applies to questions of damages. "In this circuit, . . . damage calculations alone cannot defeat certification." *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). However, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987–88 (9th Cir. 2015) (quoting *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013)). To satisfy this requirement, Plaintiff must show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). As the Supreme Court held in *Comcast*, Plaintiff's method of proving damages must be tied to his theory of liability. *Id.*

Defendant argues, *inter alia*, that Plaintiff's damage model is not tied to his theory of liability, since it does not properly assess the price premium due to the allegedly misleading battery-life statements. (ECF No. 198 at 19.) Defendant explains that Plaintiff's expert "did not use any data for laptops that were sold without battery life representations in calculating his price premium (ECF No. 198 at 13), and thus "has not studied[,] much less calculated any relationship between the price of MM07 battery life and the price of battery life in the but-for world under another unidentified standard." (ECF No. 198 at 22.) In response, Plaintiff argues that restitution should be based on measuring the difference between what consumers were promised and what they actually received, and thus he used the correct but-for scenario. (ECF No. 202 at 13.) For the reasons discussed below, the Court finds that Plaintiff has failed to demonstrate a restitution model that is capable of measuring the price premium associated with Defendant's allegedly deceptive statements, and thus has not demonstrated predominance under Rule 23(b).

Restitution is available to private litigants asserting a UCL claim. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006), *as modified on denial of reh'g* (Jan. 31, 2006). "The proper measure of restitution in a mislabeling case is the amount necessary to

5

compensate the purchaser for the difference between a product as labeled and the product as received." *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923, at *8 (N.D. Cal. Dec. 15, 2014) (citing *Colgan*, 135 Cal. App. 4th at 700). The restitution granted "must correspond to a measurable amount representing the money that the defendant has acquired from each class member by virtue of its unlawful conduct." *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 WL 60097, at *11 (N.D. Cal. Jan. 7, 2014) (citing *Colgan*, 135 Cal. App. 4th at 697–98). "Restitution is . . . determined by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices." *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014).

Here, Plaintiff and class members seek restitution "based solely on the overstated battery life." (ECF No. 188-2 at 14.) Therefore, Plaintiff must provide evidence of a damages model that can determine the price premium attributable to Defendant's use of the allegedly misleading battery-life representations on laptop fact tags. *E.g.*, *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1118 (C.D. Cal. 2015) ("[P]laintiffs must present evidence of a damages methodology that can determine the price premium attributable to [defendant] NJOY's use of the misleading advertisements and product labeling omissions.").

Plaintiff's expert, Colin Weir, proposes a "hedonic regression analysis to determine what, if any price premium is associated with an overstated battery life." (ECF No. 188-2 at 14.) To measure this, Mr. Weir utilized data only from laptop fact tags containing MM07-based representations. (ECF No. 198-7 at 13.) Mr. Weir then controlled for various factors affecting the price of laptops, such as hard drive storage capacity, screen size, weight, thickness, age, number of USB ports, etc. (ECF No. 195-11 at 20), and found that an increase in battery life equals an increase in price. (*See* ECF No. 195-11 at 27 ("The price of a laptop increases by approximately 1.916% when the battery life is increased by one hour.").) Defendant does not seem to dispute this. Indeed, if there were two laptops equal in every aspect other than battery life, it logically follows that the laptop with the higher battery life (or higher MM07 representation) would be priced higher than the laptop with the lower battery life (or lower MM07

representation).

However, Plaintiff then makes the incredible leap that because relative price increases as relative battery life increases, it must follow that a laptop labeled with an MM07-based representation must be priced higher than the exact same laptop that is labeled according to a more "realistic" battery-life standard.[2] This does not logically follow. What Plaintiff has truly calculated is the difference in value of one alleged misrepresented hour of battery life against another alleged misrepresented hour of battery life. But, Plaintiff fails to explain how a difference in the relative prices of various MM07-labeled laptops is helpful in determining whether the MM07-labeled fact tags increased laptop prices, i.e. whether a price premium is associated with the allegedly deceptive labels.

Indeed, rather than explain how his damage model is correct, Plaintiff states that the analysis used by his expert is one that is widely accepted in the Ninth Circuit, and thus may be used here. However, the cases cited by Plaintiff never approved of this type of analysis. For example, in *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *17 (N.D. Cal. May 30, 2014), the plaintiff's expert "propose[d] to determine [the defendant's] gains from its alleged misrepresentations by examining sales of the identified products before and after [the defendant] placed the alleged misrepresentations on its product labels, using regression analysis to control for other variables that could otherwise explain changes in [the defendant's] sales." The *Brazil* court later de-certified the class when the plaintiff's expert was unable to conduct a before-and-after analysis, and specifically rejected the plaintiff's attempt to use a hedonic regression analysis because the plaintiff failed to isolate the price premium attributable to the alleged misrepresentation. *Brazil*, 2014 WL 5794873, at *12, *aff'd*, 660 F. App'x 531, 535 (9th Cir. 2016). Similarly, in *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *26 (N.D. Cal. May 23, 2014), the court initially accepted the plaintiff's

---

[2] The Court is not persuaded that the proper but-for world is laptops labeled according to a different standard, rather than the inclusion of a disclaimer or no label at all. In fact, Plaintiff's FAC itself states that "Plaintiff paid more for his laptop than he would have paid had . . . the material fact not been concealed or omitted that the battery life for his laptop was determined . . . pursuant to MM07," suggesting the proper but-for world could be the inclusion of a disclaimer. (FAC ¶ 16.) However, because the Court finds that Plaintiff does not provide a valid restitution model, even assuming that Defendant would have labeled the laptops according to a different standard, the Court does not decide this issue.

7

model that "compare[d] data on identical . . . products — the product before the label statement was introduced, and the same product after its label included the alleged misrepresentation." Again, however, the class was later de-certified when the plaintiff attempted to use a hedonic regression model because it conflated different factors, failed to control for critical variables, and made baseless assumptions. *Werdebaugh*, 2014 WL 7148923, at *10–13.

Here, Plaintiff's damage model is fundamentally flawed because it conflates "battery life" and "battery life representations." Plaintiff's model assumes that the difference in price between two different laptops with two different battery lives and two different MM07 representations is the same as the difference in price between the same exact laptop, in one instance labeled with an MM07 representation and in another instance labeled according to a more "realistic" standard. For example, in Plaintiff's view, the price difference between a four hour laptop and six hour laptop both measured under the MM07 standard is the same as the price difference between the same laptop, which is labeled at four hours under the MM07 standard in one instance and labeled at six hours under a completely different standard in another instance. This is a meaningless comparison. The relative price change between different deceptively labeled laptops does not infer an absolute market price drop of all MM07-labeled laptops merely because they are all re-labeled according to a different battery-life standard. Thus, Plaintiff's proposed damage model provides the Court no insight into whether there are damages because of the representations themselves, and how these damages would be calculated on a classwide basis.

Plaintiff's reply brief further demonstrates the futility of Plaintiff's restitution model. There, Plaintiff changes course, arguing that the correct way to measure restitution damages is the "difference between what consumers were promised and what they actually received." (ECF No. 202 at 13.) This, however, is a measure of expectation, or benefit of the bargain, damages. *See* Restatement (Second) of Contracts § 347 cmt. a (1981). Under a restitution theory, consumers are not entitled to "what they were promised," or in other words, what they expected. Rather, consumers are entitled to the difference between the price they paid and the true market price of the laptops they received. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("Restitution is 'the return of the excess of what the plaintiff gave the defendant over

8

1 the value of what the plaintiff received.'"). Thus, it is irrelevant what consumers were promised.

2   As Defendant correctly points out, the proper way to assess restitution damages is to
3 consider what the economic situation would have been absent the wrongdoing. *Algarin v.*
4 *Maybelline, Ltd. Liab. Co.*, 300 F.R.D. 444, 460 (S.D. Cal. 2014) ("To establish that any
5 difference in price is attributed solely to the alleged misrepresentation, the Court must use a
6 product, exactly the same but without the [misrepresentation]."). To determine this, Plaintiff
7 would need to determine what the price premium would be (if any) as a result of the allegedly
8 deceptive statements themselves. Plaintiff would need to demonstrate that a change in
9 Defendant's labeling scheme would cause a uniform decrease in market price for all MM07-
10 labeled laptops. How can Plaintiff determine this if he has only compared laptops with the exact
11 same deceptive statements? Put simply, he cannot. *See Brazil*, 2014 WL 5794873, at *12 ("In
12 hedonics, you have to have some products where a labeling claim was made—in this case, all
13 natural—and other products that didn't have the claim."). Therefore, since Plaintiff has provided
14 no restitution model that demonstrates that a change in Defendant's laptop labeling scheme would
15 cause a change in market price for MM07-labeled laptops, he has shown no way to determine
16 whether the true market price of the class's laptops was any different from the purchase price.

17   For these reasons, Plaintiff has failed to present a damages model that is tied to his theory
18 of liability, as required under *Comcast*. *Comcast Corp.*, 569 U.S. 27, 35 ("Calculations need not
19 be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's
20 damages case must be consistent with its liability case . . . .") (citation omitted). Accordingly,
21 individualized issues predominate since Plaintiff has not demonstrated a classwide basis for
22 calculating damages. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d at
23 1123. Therefore, the Court declines Plaintiff's motion to certify a damages class under Rule
24 23(b)(3).

25 ///
26 ///
27 ///
28 ///

9

## V. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Class Certification with prejudice. Defendant's Motion to Exclude or Strike is hereby DENIED as moot.

IT IS SO ORDERED.

Dated: April 26, 2018

Troy L. Nunley
United States District Judge